IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 26-cv-00186-CYC

ENRIQUE CASTRO DE SANTIAGO,

Petitioner,

v.

MARKWAYNE MULLIN, United States Secretary, Department of Homeland Security;
DAVID J. VENTURELLA, Acting Director, United States Immigration and Customs Enforcement (ICE);
MARCOS CHARLES, Executive Associate Director, ICE Enforcement and Removal Operations;
GEORGE VALDEZ, Acting Field Office Director, Denver ICE Field Office;
JUAN BALTASAR, Warden, GEO-ICE immigration detention facility in Aurora, CO; and
TODD BLANCHE, United States Attorney General;

Respondents. [1]

---

**ORDER**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Before the Court is Petitioner Enrique Castro de Santiago's petition for Writ of Habeas Corpus ("Petition"), ECF No. 1, and his Second Motion for Leave to Amend Application for Writ of Habeas Corpus ("Motion"), ECF No. 22. The petitioner is currently detained at the GEO-ICE immigration detention facility in Aurora, Colorado, which is under the custody and control of the respondents. *Id.* ¶¶ 1, 43, 52. He primarily seeks a Court order instructing the respondents to release him. *Id.* ¶¶ 53–56. For the reasons below, the Petition is **GRANTED**, the petitioner shall be released, and the Motion is **DENIED** as moot.

[1] Pursuant to Fed. R. Civ. P. 25(d), Markwayne Mullin is automatically substituted as a defendant for Kristi Noem, David J. Venturella for Todd M. Lyons, George Valdez for Kelei Walker, and Todd Blanche for Pamela Bondi.

**BACKGROUND**

The petitioner is a citizen and national of Mexico. ECF No. 1 ¶ 1. He has lived in the United States since 1999. *See* ECF No. 14-1 ¶ 5.

In 2017, he was encountered by U.S. Immigration and Customs Enforcement ("ICE"), detained, and placed in removal proceedings. *Id.* ¶¶ 10–11. At a custody redetermination hearing before an Immigration Judge ("IJ"), he was granted release on a $10,000 bond. *Id.* ¶ 12.

In 2019, he was ordered removed to Mexico *in absentia* when he failed to appear for his individual merits hearing. *Id.* ¶ 14. However, after he was reencountered by ICE and detained, his removal proceedings were reopened and he was again released on a $10,000 bond. *Id.* ¶ 18. In 2023, an IJ reserved decision on his application for cancellation of removal due to the statutory annual cap for this form of relief. *Id.* ¶ 21;ECF No. 1 ¶¶ 14–15.

Since his release in 2019, the petitioner was convicted of Harassment – Strike/Shove/Kick in violation of C.R.S. § 18-9-111(1)(a), a misdemeanor, and received a three month deferred sentence. ECF No. 14-1 ¶ 20. He was also arrested three times for misdemeanors or petty offense in 2025, but it is not clear whether and how those matters were resolved. *Id.* ¶ 22 & n.1.

On September 30, 2025, ICE encountered and arrested the petitioner again. ECF No. 14 at 3. The same day, ICE purported to cancel his bond through a Form I-391 signed by a deportation officer, which indicated that the "conditions of the immigration bond . . . have been satisfied." *Id.*; ECF No. 14-1 at 9. The petitioner has been in detention since.

On December 10, 2025, an IJ granted the petitioner's application for cancellation of removal. ECF No. 14-2 at 11–14. DHS had until January 9, 2026 to file an appeal to the

Board of Immigration Appeals ("BIA"). ECF No. 1 ¶ 23. DHS submitted a filing receipt in this case reflecting that the BIA received its appeal of the IJ's order on January 9, 2026. ECF No. 14-3. The petitioner asserts that neither he nor his counsel have ever been properly served with DHS' appeal. ECF No. 15 at 5.

The petitioner filed the instant petition on January 15, 2026. ECF No. 1. Before the respondents filed their response to the Court's show cause order, ECF No. 4, the petitioner filed an unopposed motion to supplement his petition, which was granted. ECF Nos. 9, 12, 13. After the respondents filed their opposition to the petition, ECF No. 14, the Court ordered additional briefing from the petitioner on the legal basis for his request for relief and permitted the respondents to file a response. ECF No. 16. Both parties obliged. ECF Nos. 17, 18. The Court thus considers properly raised all arguments in the original petition, ECF No. 1, the unopposed supplement, ECF No. 9, and, to the extent that they clarify those arguments and their underlying legal bases, the additional briefing. ECF No. 17. To the extent that the petitioner's additional briefing raises arguments that cannot be fairly traced to the original petition and supplement, the Court does not consider them.

The petitioner then filed the Motion seeking leave to amend his petition to add a new ground for relief, ECF No. 22, which the respondents oppose, ECF No. 23. The Court does not consider the ground for relief raised in the proposed amended petition.

## ANALYSIS

Although the briefing is not a model of clarity, the petitioner properly raises two discernible bases for relief. First, he claims that his bond has never been lawfully revoked, and therefore, his detention lacks a valid statutory basis and violates the Administrative Procedures Act ("APA"). *See* ECF No. 1 ¶¶ 32–38, 43–52; ECF No. 9 ¶¶ 14-20; ECF No. 15

at 2–3; ECF No. 17 at 2–3. Second, he claims that he cannot be detained because the IJ granted him cancellation of removal and DHS' appeal is ineffective because it was not timely filed and properly served. *See* ECF No. 1 ¶¶ 23–31, 41–42, 43–52; ECF No. 9 ¶¶ 1–13; ECF No. 15 at 4–7; ECF No. 17 at 3–5. Because the petitioner is correct as to the first basis for relief, the Court does not reach the second.

At the outset, and contrary to the respondents' contention, the Court has subject matter jurisdiction over the petitioner's claim that his release was unlawfully revoked and his detention is therefore *ultra vires*. ECF No. 14 at 6–7. Federal courts have jurisdiction to grant a writ of habeas corpus to a petitioner who demonstrates that he is in federal custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3). "Though 8 U.S.C. § 1226(e) prohibits judicial review of the Attorney General's discretionary judgment regarding the application of § 1226, Petitioner is not challenging a discretionary determination of the Attorney General." *Lopez Cruz v. Blanche*, No. CIV-26-806-R, 2026 WL 1834408, at *4 (W.D. Okla. June 25, 2026). "Rather Petitioner is challenging the nondiscretionary procedures Respondents must use to revoke Petitioner's previous release under § 1226." *Id.*; *see Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (holding that § 1226(e) does not "limit habeas jurisdiction over constitutional claims *or* questions of law") (emphasis added).

The petitioner's detention is governed by 8 U.S.C. § 1226(a), which allows the Attorney General to "continue to detain the arrested alien" or "release the alien" on a bond or conditional parole "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). This discretionary authority has been vested in DHS. *See Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 496 n.31 (S.D.N.Y. 2025). A noncitizen detained

under this provision is entitled to a custody redetermination before an IJ. 8 C.F.R. §§ 236.1(c), (d)(1).

DHS also possesses broad statutory authority to revoke a noncitizen's release. Under 8 U.S.C. § 1226(b), "[t]he Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." Though the authority is broad, the implementing regulations limit the officials who can exercise it to "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge." 8 C.F.R. § 236.1(c)(9). Only where one of these designated officials makes the decision to revoke a noncitizen's release may the noncitizen "be taken into physical custody and detained" on the original warrant. *Id.* Courts have held that failure to comply with these requirements renders a noncitizen's detention unlawful. *See, e.g.*, *Hernandez v. Mullin*, No. CIV-26-837-G, 2026 WL 2318740, at *5 (W.D. Okla. June 5, 2026); *Singh v. Noem*, 824 F. Supp. 3d 1197, 1212–13 (D.N.M. 2026); *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1198–1201 (W.D. Wash. 2025); *Jimenez v. Bostock*, 3:25-cv-00570-MTK, 2025 WL 2430381, at *5–6 (D. Or. Aug. 22, 2025); *Chaudhari v. Crawford*, 1:25-cv-1772 (LMB/IDD), 2025 WL 3896287, at *4 (E.D. Va. Oct. 23, 2025).

Furthermore, relying on BIA precedent, federal courts have held that DHS' discretionary authority to revoke a noncitizen's release under 8 U.S.C. § 1226(b) and 8 C.F.R. § 236.1(c)(9) "is subject to an 'important implicit limitation:' 'where a previous bond determination has been made by an immigration judge, no change should be made . . . absent a change of circumstances." *Singh v. Cerna*, No. CIV-26-1194-J, 2026 WL 2242498, at *4 (W.D. Okla. Aug. 4, 2026) (quoting *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D.

Cal. 2017)); *Peña Becerra v. Sparks*, No. 2:26-cv-00212-JNP-DBP, 2026 WL 915439, at *4 n.3 (D. Utah Apr. 3, 2026); *Hernandez-Parrilla v. De Anda-Ybarra*, No. 2:25-cv-01224-MIS-KK, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025); *Luna Sanchez v. Bondi*, No. 1:25-cv-018888-MSN-IDD, 2025 WL 3191922, at *4 (E.D. Va. Nov. 14, 2025); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 262–63 (D. Me. 2025).

To be sure, the respondents point to contrary authority, *see* ECF No. 14 at 8 (citing *Salvador F.-G v. Noem*, No. 25-cv-0243-CVE-MTS, 2025 WL 1669356, at *9 (N.D. Okla. June 12, 2025)), for the proposition that DHS may revoke release granted by an IJ without a change in circumstance under § 1226(b). This appears to be a minority position, *see Singh*, 2026 WL 2242498, at *4 n.6, with good reason. If DHS could unilaterally revoke a bond order issued by an IJ at any time absent a change in circumstances, it would make the custody redetermination hearings afforded by 8 C.F.R. § 236.1(d)(1) a hollow exercise. As one district court observed, "[i]n this alternative universe, ICE would never need to appeal a bond decision, given its authority to set additional conditions of bond and to re-detain individuals at will. This is a recipe for arbitrary and erroneous deprivations of liberty." *Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035 (N.D. Cal. 2025). Moreover, such an interpretation of 8 U.S.C. § 1226(b) could run afoul of due process concerns, *see Ebu v. Tindall*, No. 3:25-cv-779-RGJ, 2026 WL 252899, at *4 (W.D. Ky. Jan. 30, 2026), just as a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (interpreting 8 U.S.C. § 1231, to contain a presumptive six-month limitation where "there is no significant likelihood of removal in the reasonably foreseeable future").

In this matter, DHS' failure to abide by these statutory and regulatory requirements in revoking the petitioner's release invalidate his current detention. After the petitioner was arrested and detained again in 2018, an IJ determined that the petitioner was not a danger to the community and that his appearance for future proceedings could be secured by a bond of $10,000, which the petitioner paid. *See* ECF No. 14 at 2; ECF No. 1-2. Perhaps DHS could have later properly revoked his release under 8 U.S.C. § 1226(b) and 8 C.F.R. § 236.1(c)(9), but the record does not reflect that they did so. *See, e.g.*, *Ledesma Gonzalez*, 808 F. Supp. 3d at 1199; *Hernandez*, 2026 WL 2318740, at *5–6; *Ebu*, 2026 WL 252899, at *3.

Initially, the only documentary evidence that the petitioner's release was revoked is the respondent's submission of the Form I-391, "Notice – Immigration Bond Cancelled," which states that the bond has been "satisfied" and is "cancelled." ECF No. 14-1. The respondents do not dispute the petitioner's allegations that such notice was "never served on [him], his bond obligor, or the Immigration Court," and that the "cash bond has never been returned to the obligor," casting doubt on whether the cancellation was effective. ECF No. 15 at 2. But more significantly, the document is signed by a deportation officer. *See* ECF No. 14-1. Even "'a Supervisory Detention and Deportation Officer[] is not among the people given the authority to revoke' an" order of release "under 8 C.F.R. § 236.1(c)(9)." *F.E. v. Blanche*, No. 26-cv-3835 (LMP/DTS), 2026 WL 2676764, at *3 (D. Minn. Sep. 11, 2026) (quoting *Mejia Diaz v. Noem*, No. 3:25-cv-960-CCB-SJF, 2025 WL 3640419, at *8 (N.D. Ind. Dec. 16, 2025)), let alone a line deportation officer. The declaration of deportation officer Kurt Nissen, submitted by respondents, does not change this conclusion. ECF No. 14-1. In relevant part, it states only that:

> On September 30, 2025, ICE officers encountered Petitioner and determined that Petitioner did not have lawful status in the United States, Moreover, Petitioner had

> been convicted of a crime and arrested several times since the IJ last granted release under bond. ICE officers arrested and detained Petitioner pending resolution of removal proceedings. ICE cancelled Petitioner's bond.

*Id.* ¶ 23. Therefore, "[n]o evidence in the record indicates any authorized ICE official chose to exercise their discretion to cancel Petitioner's Order of Release. That alone is sufficient to find the proper procedures were not followed in effectuating Petitioner's detention." *Lopez Cruz v. Blanche*, 2026 WL 1834408, at *4; *Singh*, 824 F. Supp. 3d at 1212–13; *Barco Mercado*, 811 F. Supp. 3d at 503–04 (finding that ICE acted unlawfully in re-detaining noncitizen where there was "no evidence" demonstrating, among other issues, "who made the decision to detain him").

Furthermore, the record does not reflect that "ICE's decision to unilaterally cancel the Immigration Judge's 2018 bond order" was pursuant to "a change in circumstance." *Dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988, at *9 (D. Mass. Aug. 14, 2025). The respondents contend that no change in circumstances is necessary, but in any event, one exists because the petitioner was convicted of a misdemeanor in 2021 and was arrested for misdemeanors or petty offenses on three occasions in 2025. ECF No. 14 at 8. However, the record in this case does not suggest that ICE revoked his release for this reason. To the contrary, the cancellation notice itself makes no reference to these incidents, and states only "that the conditions of the immigration bond . . . have been satisfied and the bond is cancelled." ECF No. 14-1 at 9. As the petitioner argues, ECF No. 15 at 2–3, this document is strong evidence that ICE did not cancel his bond because of these incidents and instead considered the petitioner compliant with his release. Deportation Officer Nissen's declaration is not to the contrary. While he notes the petitioner's legal issues since his 2019 release, he conspicuously does not say that ICE was aware of them at the time of his arrest or that they played any role in the decision to revoke his bond. ECF No. 14-1 ¶ 23. Under these circumstances, the respondents' reliance on

these incidents appears to be a post-hoc rationalization, which "cannot justify an agency's actions." *M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 230267, at *13 (D. Ore. Aug. 21, 2025); *Ledesma Gonzalez*, 808 F. Supp. 3d at 1198–1201; *Munoz Caraguay v. Larocco*, 818 F. Supp. 488, 492–94 (S.D.N.Y. 2026).

Accordingly, the petitioner's "re-detention without changed circumstances justifying the revocation of his IJ-granted bond," and without following the procedures required by law, violated the INA and its implementing regulations. *Singh*, 2026 WL 2242498, at *5. His detention is therefore *ultra vires* in violation of the APA, and he is entitled to relief. 5 U.S.C. § 706(2)(C), (D); *see Ledesma*, 808 F. Supp. 3d at 1201.

Turning to the appropriate relief, "[r]eleasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated" his rights by detaining him in violation of the applicable statutes and regulations. *Cordova v. Blanche*, 5:26-cv-05266-KES, 2026 WL 2861605, at *8 (C.D. Cal. Sept. 23, 2026). As one court recently put it in a similar case, the petitioner's detention by ICE "was unlawful from the moment it began, and [he] should be released from ICE custody immediately." *Hernandez*, 2026 WL 2318740, at *6. "The court will not bless continued detention pursuant to § 1226(b), even with a post-detention bond hearing" when respondents failed to afford him the required statutory and regulatory due process protections. *Id.*; *see also Voronkov v. Baltasar*, No. 26-cv-02599-NYW, 2026 WL 2540110, at *2 (D. Colo. Aug. 28, 2026) (holding that "(1) ICE violating its own regulations in detaining an individual is a due process violation, and (2) this violation makes the detention unlawful and the proper remedy release").

Finally, because the Court grants the petitioner's requested relief on this claim, his second motion to amend his petition is denied as moot.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED**, and the Petitioner's Second Motion for Leave to Amend Application for Writ of Habeas Corpus, ECF No. 22, is **DENIED** as moot.

It is further ORDERED that:

(1) The petitioner's continued detention under 8 U.S.C. § 1226(a) is unlawful;

(2) The respondents shall **RELEASE** the petitioner on or before **October 5, 2026**. His release may be subject to reasonable conditions imposed by the Department of Homeland Security, not to include the imposition of GPS monitoring;

(3) The respondents shall return any of the petitioner's belongings that are in their possession;

(4) Judgment shall enter accordingly, and the Clerk of the Court is directed to close this case.

DATED: October 2, 2026

BY THE COURT:

Cyrus Y. Chung
United States Magistrate Judge